COLORADO COURT OF APPEALS                                    **2017COA23**

Court of Appeals No. 16CA0322
City and County of Denver District Court No. 15CV30089
Honorable Shelley I. Gilman, Judge

Denise G. Nibert,

Plaintiff-Appellee,

v.

Geico Casualty Company,

Defendant-Appellant.

JUDGMENT AND ORDER AFFIRMED
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FOX
Román and Booras, JJ., concur

Announced February 23, 2017

Franklin D. Azar & Associates, P.C., Michael Born, Aurora, Colorado, for
Plaintiff-Appellee

Deisch, Marion & Klaus, P.C., Gregory K. Falls, Denver, Colorado, for
Defendant-Appellant

Burg Simpson Eldredge Hersh & Jardine, P.C., Thomas W. Henderson, Brian
K. Matise, Nelson Boyle, Englewood, Colorado, for Amicus Curiae The Colorado
Trial Lawyers Association

¶ 1     Geico Casualty Company (Geico Casualty) appeals the trial court's judgment entered against it on jury verdicts returned in favor of Denise G. Nibert on her claims of common law bad faith and violations of section 10-3-1116, C.R.S. 2016.  Geico Casualty also appeals the trial court's order awarding Nibert her attorney fees.  We affirm.

## I.     Background

¶ 2     Nibert and her husband were injured when a car collided with their motorcycle in October 2012, along Interstate Highway 25.[1] Nibert fractured her tibia and fibula and required surgery.  The at-fault driver of the car was insured by Allstate Insurance Company (Allstate), and Allstate paid Nibert its insurance limits of $50,000, settling Nibert's claims against the at-fault driver.  Nibert had underinsured motorist (UIM) coverage on the motorcycle through Geico Indemnity Company (Geico Indemnity), and Geico Indemnity paid Nibert her UIM coverage limit of $50,000 before trial.  Nibert had a separate UIM policy on the automobiles in her household through Geico Casualty, with a $25,000 coverage limit,

_____

[1] Nibert's husband was the original plaintiff in the case but settled his claims before trial.

which was secondary to the motorcycle policy. On July 3, 2014, Geico Casualty offered Nibert $1500 to settle her claim under her secondary automobile UIM coverage.

¶ 3    On January 8, 2015, Nibert sued Geico Casualty for breach of contract, common law bad faith, and statutory delay under section 10-3-1116. After discovery and before trial, Geico Casualty paid Nibert the $25,000 UIM coverage limit to settle Nibert's claims for breach of contract.

¶ 4    Following trial on Nibert's remaining claims of bad faith and statutory delay, a jury returned verdicts awarding Nibert $33,250 in noneconomic damages on her bad faith claim and $25,000 for her statutory delay claim. The trial court entered judgment on the jury's verdict for Nibert's bad faith claim and entered judgment of $50,000 as damages for Nibert's statutory delay claim.

¶ 5    The trial court also granted Nibert's motion for attorney fees, awarding $118,875.30 in fees. The court rejected Geico Casualty's arguments regarding the reasonableness of Nibert's attorney's hourly rates and scope of work performed and found that the lodestar amount of $118,875.30 did not warrant any upward or

downward adjustment based on the facts and subject matter of the case.

## II.    Defense Theory Jury Instruction

¶ 6    Geico Casualty argues that the trial court erred in failing to adequately instruct the jury on its theory of defense — specifically that challenges to debatable claims are reasonable.  We disagree.

### A.    Preservation and Standard of Review

¶ 7    The parties agree that Geico Casualty preserved its argument for appeal.

¶ 8    We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law.  *Clyncke v. Waneka,* 157 P.3d 1072, 1078-79 (Colo. 2007).  If a jury instruction correctly states the law, we review the trial court's decision to give the instruction for an abuse of discretion.  *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo. 2011).  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or when it misapplies the law.  *Landmark Towers Ass'n, Inc. v. UMB Bank, N.A.,* 2016 COA 61, ¶ 31.

### B. Law and Analysis

¶ 9 Rejecting a tendered instruction that properly instructs the jury on the applicable law in the case and the evidence at issue, which are not adequately covered elsewhere, is error. *Schuessler v. Wolter*, 2012 COA 86, ¶ 26. However, it is not error for a trial court to reject a party's instruction when that instruction misstates the law, is argumentative, improperly emphasizes specific evidence, or when the court allows the party to otherwise argue its theory of the case. *Id.*; *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 73-74 (Colo. App. 2004); *see also People v. Merklin*, 80 P.3d 921, 927 (Colo. App. 2003) (concluding that the trial court properly rejected the defendant's instruction where the defendant was not precluded from presenting his theory of the case during closing argument); *People v. Renaud*, 942 P.2d 1253, 1255-57 (Colo. App. 1996) (affirming the trial court's refusal to give the defendant's requested instructions where the defendant was not deprived of his opportunity to present his theory of the case).

¶ 10 Geico Casualty tendered the following instruction, which the trial court refused to give to the jury: "It is reasonable for an insurance company to challenge claims that are fairly debatable. A

claim is fairly debatable if reasonable minds could disagree on the outcome." Instead, the trial court relied on the Colorado pattern jury instructions governing common law bad faith and first-party statutory claims. In relevant part, the court instructed the jury as follows:

- Instruction 6 stated the elements of common law insurance bad faith, including that Geico Casualty knew or recklessly disregarded the fact that its conduct or position was unreasonable.

- Instruction 7 provided the standards for unreasonable conduct and unreasonable position, including the necessary comparison to what "a reasonably careful insurance company" would do under similar circumstances.

- Instruction 8 gave the elements of statutorily unreasonable delay, including the requirement that the delay was "without a reasonable basis."

- Instruction 9 listed prohibited insurer practices found in section 10-3-1104(1)(h), C.R.S. 2016.

The instructions did not state that it is reasonable for an insurance company to challenge claims that are fairly debatable. *See Vaccaro*

*v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶ 41 (stating that, under Colorado law, it is reasonable for an insurer to challenge claims that are fairly debatable).

¶ 11    However, the trial court allowed Geico Casualty to present expert testimony regarding the "fairly debatable" issue and argue its theory of defense to the jury. Geico Casualty's expert, Jon Sands, testified that, in his opinion, Geico Casualty acted reasonably in handling Nibert's UIM claim. Sands also testified about what it means to have a claim that is fairly debatable and opined that disagreements over the value of an insured's claim are neither uncommon nor unreasonable. In closing argument, Geico Casualty reiterated Sands' testimony, emphasizing to the jury that "he also told you that it's reasonable for insurers to challenge claims that are fairly debatable."

¶ 12    Geico Casualty argues that the ability to present its theory of defense and argument related to the "fairly debatable" issue did not adequately remedy the court's rejection of their instruction. We disagree. Contrary to Geico Casualty's argument, the tendered instruction went beyond the reasonableness of a challenge to a claim that is fairly debatable. Instead, the instruction, as tendered,

misstated the law by effectively conflating the reasonableness elements of the common law bad faith claim and the statutory delay claim by inquiring only into whether Nibert's claim was fairly debatable. Colorado law is clear that whether a claim is fairly debatable is not the sole inquiry in a reasonableness analysis. *See Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶¶ 22-24 (*cert. granted on other grounds* June 6, 2016).

¶ 13 In *Fisher*, another division of this court concluded that "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law," but instead is a factor to be considered in a broader evaluation of whether an insurer acted reasonably. *Id.* at ¶ 24 (quoting *Vaccaro*, ¶ 42). The instruction in this case, as tendered, overly emphasized the "fairly debatable" issue, and, if allowed, could have directed the jury to find Geico Casualty's actions reasonable based purely on whether the claim was fairly debatable — rather than upon application of a balancing inquiry to more broadly determine reasonableness.

¶ 14 Geico Casualty further argues that the language in *Fisher* and *Vaccaro*, concluding that fair debatability is merely a factor to be considered in the ultimate reasonableness determination, is

distinguishable where, as here, the issue arises in the context of a trial, rather than during resolution of a dispositive motion. However, the procedural posture is not relevant because the ultimate determination that a trial court must make when ruling on proffered jury instructions is whether the instruction adequately instructs the jury on the relevant law. *See Schuessler*, ¶ 26. Therefore, the conclusions in *Fisher* and *Vaccaro* that fair debatability is not outcome determinative and is but a factor in the broader reasonableness inquiry are instructive here.

¶ 15 Moreover, the "fairly debatable" issue is not relevant to a statutory delay claim pursuant to section 10-3-1116. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226-27 (10th Cir. 2016) (summarizing Colorado's unreasonable delay law, agreeing with cases limiting the "fairly debatable" issue to common law bad faith claims, and opining that "under Colorado law, fair debatability can be a relevant but not necessarily a determinative factor as to whether the insurer acted reasonably"). Including Geico Casualty's proposed instruction — without further explanation of its purpose and proper interpretation — in the jury instructions could have prompted the jury to improperly weigh the defense theory. *See id.*

The trial court avoided this outcome by refusing to give the instruction.[2]

¶ 16    Our analysis is aided by the fact that Geico Casualty took full advantage of the opportunity to articulate its "fairly debatable" argument to the jury through its expert witness and during closing argument. *See Schuessler*, ¶ 26. Geico Casualty's remarks during closing argument largely mirrored the language of the rejected instruction. And the record supports the conclusion that the jury was informed of Geico Casualty's defense theory, further weighing against an obligation that its defense theory be included as a formal jury instruction. *See Merklin*, 80 P.3d at 927; *Renaud*, 942 P.2d at 1255-57.

---

[2] Geico Casualty argued during oral argument that the trial court's refusal to give the proposed "fairly disputable" instruction stripped Geico Casualty of its right to have the jury instructed on its theory of defense. *See Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1385 (Colo. 1998). Here, the "fairly debatable" instruction effectively conflated the reasonableness elements of both of Nibert's claims, and it is not the responsibility of the trial court, especially in a civil action, to "craft appropriate theory of the case instructions when a party's own counsel declines to do so." *Id.* at 1384. Because the "fairly debatable" instruction, as tendered, was not an accurate statement of the law, the trial court did not err in refusing to provide it to the jury. *See id.*

¶ 17     We conclude that the instructions, as given, adequately instructed the jury of the applicable law and that the parties were afforded ample opportunity to present their case theories to the jury. The trial court's ruling was neither manifestly arbitrary, unreasonable, or unfair, nor a misapplication of the law. *Landmark Towers Ass'n*, ¶ 31. Therefore, the trial court did not err in rejecting Geico Casualty's tendered instruction.

### III.     Scope of Remedy Under Section 10-3-1116[3]

¶ 18     Geico Casualty argues that the trial court erred in awarding Nibert recovery of two times her UIM benefit as a penalty under section 10-3-1116. We disagree.

### A.     Preservation and Standard of Review

¶ 19     The parties agree that Geico Casualty preserved its argument for appeal.

---

[3] This issue is substantially similar to the issue on which the supreme court granted certiorari in *Barriga v. American Family Mutual Insurance Co.*, (Colo. App. No 13CA1944, Oct. 8, 2015) (not published pursuant to C.A.R. 35(f)) (*cert. granted* Aug. 22, 2016). Until we have more guidance from the supreme court, we elect to follow *Barriga* and *Hansen v. American Family Mutual Insurance Co.*, 2013 COA 173, ¶¶ 59-63, *rev'd on other grounds*, 2016 CO 46, ¶ 4.

¶ 20    We review a trial court's statutory interpretation de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010); *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001).

¶ 21    When interpreting a statute, we try to give effect to the intent of the General Assembly. *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 12; *Vista Ridge Master Homeowners Ass'n, Inc. v. Arcadia Holdings at Vista Ridge, LLC*, 2013 COA 26, ¶ 9.  We look first to the plain language of the statute, giving the language its commonly accepted and understood meaning. *Smith*, 230 P.3d at 1189; *Vista Ridge Master Homeowners Ass'n*, ¶ 9.  Further, we construe statutory provisions as a whole, giving effect to the entire statute. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008); *Vista Ridge Master Homeowners Ass'n*, ¶ 9.  We look at the context in which a statutory term appears and ascertain the term's meaning by reference to the words associated with it. *Platt v. Aspenwood Condo. Ass'n, Inc.*, 214 P.3d 1060, 1063 (Colo. App. 2009).

¶ 22    When the language of the statute is clear and unambiguous, we give effect to its plain and ordinary meaning. *Stamp v. Vail Corp.*, 172 P.3d 437, 442 (Colo. 2007).  However, when the language

11

is ambiguous — that is, reasonably susceptible of multiple meanings — we may consider extrinsic indications of the General Assembly's intent.  *Id.*; *In re M.D.E.*, 2013 COA 13, ¶ 10.

### B.    Law and Analysis

¶ 23    Section 10-3-1116(1) provides: "A first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."  Section 10-3-1116(4) specifies that "[t]he action authorized in this section is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future."  *See also Travelers Prop. Cas. Co. of Am. v. Stresscon Corp.*, 2016 CO 22M, ¶ 16 ("[I]n addition to contractual remedies for breach of an insurance contract, an insurer's bad faith breach also gives rise to tort liability.").  "Damages awarded pursuant to this section shall not be recoverable in any other action or claim."  § 10-3-1116(4).

¶ 24    Geico Casualty argues that these provisions show that the statute is penal in nature and must be strictly construed in its favor.  This strict construction, Geico Casualty contends, leads to

the conclusion that the trial court erred in not allowing a setoff of the ultimate statutory damages award, in the amount of the $25,000 previously paid to Nibert on her UIM claim. We disagree.

¶ 25    Other divisions of this court have recently addressed this issue. *See Barriga v. Am. Family Mut. Ins. Co.*, (Colo. App. No. 13CA1944, Oct. 8, 2015) (not published pursuant to C.A.R. 35(f)) (*cert. granted* Aug. 22, 2016); *Hansen v. Am. Family Mut. Ins. Co.*, 2013 COA 173, ¶¶ 59-63, *rev'd on other grounds*, 2016 CO 46, ¶ 4. We agree with and follow these divisions' analyses and conclusions that a statutory damages award of two times a delayed benefit — even when, as here, that benefit has already been paid, resulting in an effective payment to an insured of three times the contracted benefit — is contemplated by the plain meaning of section 10-3-1116. *See Hansen*, 2013 COA 173, ¶ 61.

¶ 26    The language in subsections (1) and (4) of section 10-3-1116 is plain. It authorizes an award of twice the covered benefit in addition to any recovery of that benefit through another source. Therefore, the trial court did not err when it awarded Nibert $50,000 in damages on her successful statutory claim — which represented two times the $25,000 UIM benefit from her policy with

Geico Casualty — even though Geico Casualty paid Nibert the $25,000 UIM benefit before trial.

## IV.    Attorney Fees Pre-Appeal

¶ 27    Geico Casualty contends that the trial court erred in awarding Nibert attorney fees incurred to prosecute the common law bad faith and statutory delay claims, both before and after the date when payment of the UIM benefit was delayed.  Geico Casualty argues that the window for attorney fees allowed pursuant to section 10-3-1116 is limited to the period from the date the benefit was first delayed to the date the benefit was actually paid.[4]  As a matter of first impression, we reject the argument.

### A.    Preservation and Standard of Review

¶ 28    The parties agree that Geico Casualty preserved its claims for appeal.

¶ 29    We review de novo a trial court's interpretation of a statute. *Smith*, 230 P.3d at 1189.  "We review the district court's decision to

---

[4] The trial court found that "[u]nder [Geico Casualty's] theory, the relevant time period for recovery of attorney fees is from July 13, 2014, the date on which [Geico Casualty] made the $1500.00 underinsured offer, through August 11, 2015, the date on which [Geico Casualty] paid the disputed $25,000 contract benefit to Ms. Nibert."

14

award attorney fees and costs for an abuse of discretion, but we review the legal conclusions which provided the basis for that decision de novo." *Jorgensen v. Colo. Rural Props., LLC*, 226 P.3d 1255, 1259 (Colo. App. 2010).

### B.    Law and Analysis

¶ 30    "In the absence of an express statute, court rule, or private contract to the contrary, attorney fees generally are not recoverable by the prevailing party in a contract or tort action." *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 818 (Colo. 2002).

¶ 31    Section 10-3-1116(1) expressly authorizes a first-party claimant "whose claim for payment of benefits has been unreasonably delayed or denied [to] bring an action in a district court to recover reasonable attorney fees and court costs[.]"

¶ 32    The trial court's order confirmed that the jury found that Geico Casualty's delay in paying Nibert her contractual benefit lacked a reasonable basis and awarded Nibert "all attorney fees incurred in successfully pursuing her statutory claim and obtaining the remedies available to her." Geico argues that this construction undermines the American Rule and fosters an unwarranted windfall where, as here, the eventual attorney fee award is substantially

15

larger than an original contingency fee agreement would have been if it were based on recovering only the contracted UIM benefit. Nibert responds that Geico Casualty's contention ignores the legislative intent behind the expressed allowance of attorney fees in section 10-3-1116(1) and that Geico Casualty's interpretation of the relevant portion of section 10-3-1116(1) would lead to the absurd result of allowing insurance companies to avoid accountability and attorney fee awards by paying delayed benefits until after litigation is completed. The Colorado Trial Lawyers Association (the CTLA), as amicus curiae, argues that section 10-3-1116 provides a clear exception to the American Rule and clear authorization for an award of "fees on fees" because the statute includes reasonable attorney fees in the damage calculation. The CTLA argues that the statute exists to curb abuses in the insurance industry and that the interpretation Geico Casualty advocates could lead to unreasonable litigation costs incurred by insureds in enforcing contractual agreements and seeking to recover the expenses of battling large insurance companies.

¶ 33    We agree with the trial court, Nibert, and the CTLA. Geico Casualty offers no persuasive legal support for its assertions that

section 10-3-1116(1) does not contemplate an award of attorney fees incurred litigating anything other than a contractual claim or incurred for the time before and after a delayed benefit accrues and is paid. First, we disagree with Geico Casualty's argument that extra-contractual claim litigation should not be the basis for attorney fees awarded under the statute. The statute itself explicitly authorizes one of these extra-contractual claims — the statutory delay claim. § 10-3-1116(1). Nothing in the statute's language limits an award of attorney fees to a contractual claim and the only limit on the fees is that they must be reasonable — a factual determination that the trial court made, with ample record support. *See Jorgensen*, 226 P.3d at 1259. Moreover, the process of litigating a common law bad faith claim and a statutory delay claim are inescapably intertwined, as many of the relevant elements are shared and much of an attorney's work in a case is not limited to one claim. *See Fisher*, ¶ 23.

¶ 34 The only support Geico Casualty provides is a case from the Supreme Court of California, *Cassim v. Allstate Ins. Co.*, 94 P.3d 513 (Cal. 2004). Not only is the analysis from *Cassim* not binding on our court, *see Wal-Mart Stores, Inc. v. United Food & Commercial*

*Workers Int'l Union*, 2016 COA 72, ¶ 17 (we are not bound by the decisions of the courts of other states), it is also factually distinguishable. *Cassim* involved attorney fees associated with a common law bad faith claim and did not involve a statute expressly authorizing an award of attorney fees as damages. *Cassim*, 94 P.3d at 528. The analysis in *Cassim* is therefore inapplicable to the issues presently before us and its discussion is unhelpful.

¶ 35 We are further persuaded by Nibert's suggestion that Geico Casualty's argument — that fees should not be awarded for a period before a delay occurred or after eventual payment — would create an unfair loophole through which insurance companies could avoid paying full attorney fees under the statute. Geico Casualty's concern is addressed by the statute's reference to "reasonable" attorney fees. *See* § 10-3-1116(1). We agree with Nibert that Geico Casualty's argument regarding the date of delay is a factual issue and was implicitly rejected in the trial court's written order.

¶ 36 While the statute does not automatically authorize an award of all attorney fees, the statute limits the award of attorney fees to only those that are reasonable. This necessarily involves a factual determination of relatedness of the sought fees to the delay for

18

which the fees are awarded.  *See Ravenstar LLC v. One Ski Hill Place LLC*, 2016 COA 11, ¶¶ 60-66.  To be sure, it could be unreasonable for a trial court to award fees incurred before a more obvious date of delay, but we are not presented with that scenario here.  The record reflects that there were many dates — during the course of Nibert's dealings with the insurer after her injury — that a fact finder could have rationally concluded was the date on which Geico Casualty first unreasonably delayed its payment.  We defer to the trial court's factual determinations absent clear error — which we conclude is not present in the trial court's implicit finding that the delay accrued when Nibert was first forced to pursue her statutory claim.  *See First Citizens Bank & Tr. Co. v. Stewart Title Guar. Co.*, 2014 COA 1, ¶ 13.

¶ 37     For the foregoing reasons, we conclude that the trial court did not err in awarding Nibert attorney fees under section 10-3-1116(1) without limiting those fees to work completed in prosecution of her contract claim or to the period between the delay and the eventual payment of the UIM benefit.

## V.    Appellate Attorney Fees

¶ 38    Nibert requests an award of her attorney fees incurred defending this appeal pursuant to section 10-3-1116 and C.A.R. 39.1.  "When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal."  *Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 75 (quoting *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006)).  Therefore, we grant Nibert's request for appellate attorney fees.  We remand to the trial court to determine and award the amount of reasonable attorney fees and costs that Nibert incurred in successfully defending the trial court's judgment.  *See id.*

## VI.    Conclusion

¶ 39    The judgment and order are affirmed.  The case is remanded for the trial court to determine and award the amount of reasonable attorney fees and costs Nibert incurred on appeal.

JUDGE ROMÁN and JUDGE BOORAS concur.